**Stephen G. McCARTHY, et al.**

v.

**U.S.I. CORPORATION et al.**

Supreme Judicial Court of Maine.

Argued May 6, 1996.
Decided June 20, 1996.

George Z. Singal (orally), Daniel A. Pileggi, Gross, Minsky, Mogul & Singal, P.A., Bangor, for Plaintiffs.

Wayne R. Crandall (orally), Willard D. Pease, Mari S. Wells, Crandall, Hanscom, Pease & Collins, P.A., Rockland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Stephen G. McCarthy and Ursula Kruse–Vaucienne appeal from a judgment entered in the Superior Court (Knox County, *Atwood, J.*) on their complaint against U.S.I. Corporation and its shareholders.[1] Stephen and Ursula contend that the court erred in (1) finding that they are not shareholders in U.S.I.; (2) finding that they were properly terminated; (3) entering judgment as a matter of law in favor of U.S.I. on their claims of fraud and negligent misrepresentation; and (4) awarding excessive costs to U.S.I. We modify and then affirm the judgment.

In 1993 Stephen and Ursula, husband and wife, developed a plan to establish a lobster pound business. The plan involved the purchase of three lobster pounds and a fishing pier in Friendship and the lease of another fishing pier in Phippsburg. A group of investors was formed through the efforts of Ira Hersh.

In November 1993 Stephen, Ursula, and Hersh entered into a purchase and sale agreement for the properties. The investors made the down payment. Stephen, Ursula, and the investors continued to negotiate over the form of the new business until the time of the closing. On December 21, 1993, U.S.I. was incorporated in Maine. On December 31 Stephen, Ursula, and an authorized agent of Hersh and the investors, executed an Incorporation Agreement. Stephen, Ursula, and Hersh then assigned to U.S.I. their right, title, and interest in the purchase and sale agreement. The execution of the Incorpo-

---

1. The following are U.S.I. shareholders: Avivith Oppenheim, Anthony Dobrski, Susan Mandell, Ann Zeig, Keith Fleischman, Daniel Fitzgerald, Scott DeSano, and Ira Hersh. Except for Hersh, all of the shareholders received their ownership interest in return for a contribution of capital. Hersh received his shares in return for assembling the group of investors.

ration Agreement, the assignment, and the closing on the properties occurred on the same day. Pursuant to the Incorporation Agreement U.S.I. hired Stephen and Ursula as managers of the corporation for a five year term.

In the summer of 1994 the investors became concerned when they learned that Stephen and Ursula had not authorized any repairs to the lobster pounds, had expended substantial corporate funds on personal expenses, had not obtained insurance on corporate assets, and had not paid U.S.I.'s payroll taxes.

On August 30, 1994, six of U.S.I.'s shareholders signed a document, purporting to be a unanimous resolution of the shareholders in lieu of a meeting, electing Daniel Fitzgerald, Hersh, and Stephen Plopper as directors and authorizing them to terminate Stephen and Ursula as managers of U.S.I. and to remove them from any office they held in U.S.I. The document did not include Stephen and Ursula's signatures and also was not signed by two of the investor shareholders. Fitzgerald, Hersh, and Plopper signed a resolution as "all of the members of the Board of Directors of U.S.I." terminating Stephen and Ursula's employment. When Stephen and Ursula received the resolutions and a letter explaining that they had been terminated, they objected and demanded reinstatement. On January 12, 1995, at a special meeting of the shareholders, the shareholders voted to ratify the prior actions of the shareholders regarding the discharge.

In September 1994 U.S.I. and its shareholders commenced an action against Stephen and Ursula seeking replevin of certain corporate records, a declaratory judgment as to the rights of the parties pursuant to the Incorporation Agreement, an injunction prohibiting Stephen and Ursula from participating in U.S.I. affairs, and a judgment against Stephen and Ursula for breach of the Incorporation Agreement. Stephen and Ursula filed a motion for a temporary restraining

order and a preliminary injunction challenging their termination. On the same day they filed a complaint against U.S.I., its shareholders, and Plopper alleging a breach of contract and the tortious interference with contractual relations, and sought a temporary restraining order to reinstate themselves, a declaratory judgment as to the rights of the parties, the appointment of separate counsel for U.S.I., and the dissolution and disbursement of U.S.I.'s assets. U.S.I. counterclaimed alleging the following theories of recovery: conversion, fraud, repayment of monies owed, and breach of a fiduciary duty. The actions were consolidated. Stephen and Ursula were subsequently allowed to amend their complaint to allege fraud and negligent misrepresentation against Fitzgerald, Hersh, and Plopper.

At the close of Stephen and Ursula's case, in a jury-waived trial of the consolidated actions, U.S.I. moved for, and the court orally granted, a judgment as a matter of law against all of Stephen and Ursula's claims and in favor of U.S.I.'s request for a declaratory judgment. *See* M.R.Civ.P. 50(d). The court found that the Incorporation Agreement constituted a binding contract that Stephen and Ursula had breached and that Stephen and Ursula had been properly discharged for mismanaging U.S.I. and diverting corporate funds to their own use. The court then issued a written decision awarding $46,924.40 as damages, $54,317.59 as attorney fees, and $15,574.96 as costs.[2] Following the court's denial of their motion for findings of fact and conclusions of law, Stephen and Ursula filed this appeal.

■ When the trial court in a non-jury case grants a motion for a judgment as a matter of law pursuant to M.R.Civ.P. 50(d) at the close of the plaintiff's case after resolving factual issues against the plaintiff, we are not required to view the evidence in the light most favorable to the plaintiff. *Smith v. Welch,* 645 A.2d 1130, 1132 (Me.1994). Rather, we must accept the facts found by the

**2.** In its written decision the court entered judgment for U.S.I. on Count I (replevin), Count II (declaratory judgment) and Count IV (breach of contract) of U.S.I.'s complaint and Count I (conversion), Count III (monies owed) and Count IV

(breach of fiduciary duty) of its counterclaim. The court entered judgment for Stephen and Ursula on U.S.I.'s claims for lost profits, punitive damages, fraud, and sanctions.

court unless those findings are clearly erroneous. *Id.*

## I.

The focal point of the parties' disagreement relates to section 3(c) of the Incorporation Agreement that provides:

Twenty-five percent (25%) of the authorized Class A shares (being 1,250) shall be issued to the Managers in accordance with the following schedule and terms:

(1) The 25% interest of Managers shall be issued and vested in Managers as of date of closing; however, such stock shall be escrowed and restricted as follows:

(a) Five percent (5%) of the authorized shares will be released from escrow jointly to McCarthy and Kruse–Vaucienne at the end of each year of the Initial Term [5 years], commencing December 31, 1994, until the total of twenty-five percent (25%) of the authorized Class A shares have been released to McCarthy and Kruse–Vaucienne.

(b) The release of shares from escrow to the Managers is conditional upon their continued employment with the Corporation.

(c) In the event the Shareholders of the Corporation decide to sell either the assets or stock of the Corporation prior to the expiration of the Initial Term, and the Managers are in the employ of the Corporation, then in such event, all of the shares remaining in escrow will be released to the Managers prior to such sale in order that the Managers will have a twenty-five percent (25%) interest in the Corporation at the time of the sale.

(d) The Managers' shares shall be subject to a restrictive legend, which shall be prominently displayed on shares issued to the Managers, and placed in escrow. The restrictive legend shall be removed from shares released from escrow to the Managers. The Managers agree that should their employment with the Corporation be terminated before the end of the Initial Term, either voluntarily or involuntarily, then in such event, the Corporation shall redeem the shares then released to the Managers at fair market value.

The court found that the parties intended that Stephen and Ursula earn their stock ownership over time, specifically five percent of the outstanding stock at the end of each year that they were still employed. Accordingly, the court determined that Stephen and Ursula were not shareholders at any time prior to their termination because the termination occurred in their first year of employment.

■■■ Stephen and Ursula contend that the fact that the final agreement did not characterize their stock as treasury stock, as prior drafts of the agreement had, demonstrates the parties' intent that twenty-five percent of U.S.I. stock was vested in them on the date of the closing. Stephen and Ursula also contend that several provisions in the agreement recognize their status as shareholders: the restrictive legend required to be displayed on their shares; their power to elect three members of the board of directors; the lack of temporal limitations on their right to purchase or sell stock; and the failure of the agreement to address the disposition of the shares of stock issued to them and held in escrow in the event they are fired, retire, or resign. Stephen and Ursula contend that the agreement should be construed against U.S.I. because an attorney for the primary investor drafted the agreement. They further contend that the inclusion of Stephen and Ursula's names in a list of shareholders of U.S.I. in its subchapter S election shows that they were shareholders.[3]

■■■ Stephen and Ursula do not challenge the court's conclusion that the Incorporation Agreement is ambiguous. If contract language is ambiguous its interpretation is a question of fact that must be determined by

---

**3.** Stephen and Ursula also contend that their pledge of their stock to U.S.I. and their retention of rights in that stock gave U.S.I. a security interest in the escrowed shares and because U.S.I. did not comply with the requirements of Article 9 of the Uniform Commercial Code it is not entitled to the escrowed stock or its value. We decline to address this issue because Stephen and Ursula did not raise it at trial. *Scott v. Lipman & Katz, P.A.,* 648 A.2d 969, 974 (Me. 1994) (the Court will not address issues raised for the first time on appeal).

the factfinder. *Tondreau v. Sherwin–Williams Co.*, 638 A.2d 728, 730 (Me.1994). " 'Once an ambiguity is found then extrinsic evidence may be admitted and considered to show the intention of the parties.' " *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995) (citation omitted). A contract should be construed viewing it as a whole. *Bartley v. Eastern Me. Medical Ctr.*, 617 A.2d 1020, 1022 (Me.1992). An interpretation that would render any particular provision in the contract meaningless should be avoided. *Top of the Track Assocs. v. Lewiston Raceways, Inc.*, 654 A.2d 1293, 1296 (Me.1995).

■ Plopper testified that in drafting the agreement he contemplated that the stock would be issued into escrow subject to specific conditions for release, and that stock would be earned over five years. Hersh and Fitzgerald also testified that Stephen and Ursula would have to earn their stock over time. In addition, Hersh explained that he included Stephen and Ursula's names in the list of shareholders in the subchapter S election as a matter of convenience. He expected that Stephen and Ursula would earn twenty-five percent of the shares over time and therefore listed them as shareholders to avoid having to file another election that required all the investors' signatures at the end of Stephen and Ursula's first year of employment.

■ The court found the testimony of Plopper, Fitzgerald, and Hersh credible and that of Stephen not credible. The credibility of witnesses is within the exclusive province of the factfinder. *Martin v. Brown*, 650 A.2d 937, 940 (Me.1994). Thus, the finding of the court that Stephen and Ursula are not shareholders of U.S.I. is not clearly erroneous. *F.D.I.C. v. Proia*, 663 A.2d 1252, 1254 (Me. 1995).

## II.

Stephen and Ursula contend that the shareholder action taken on August 30, 1994, authorizing the termination of their employment, is invalid because, even if they were not shareholders, the written consents of all other shareholders were not obtained as required by 13–A M.R.S.A. § 620(2) (1981). They also argue that the vote of the shareholders on January 12, 1995, which purported to ratify the prior action regarding their termination was ineffective because it occurred after the time they were entitled to five percent of the stock and they did not receive notice of the meeting. They further contend that they were denied their right to elect three directors who would have voted against their termination.

The court found that the shareholders and directors acted properly for two reasons: first, due to Stephen and Ursula's extreme mismanagement and diversion of corporate assets for their personal gain the majority shareholders and directors were faced with an emergency situation and they had to act quickly to prevent further misuse of corporate assets and the eventual financial ruin of U.S.I; second, the shareholders attempted to comply with the requirements of Maine law and the subsequent ratification legitimized their prior action. The court also noted that Stephen and Ursula bear some responsibility for the "somewhat irregular" shareholder action because Stephen and Ursula failed to take any corporate organizational steps to elect directors, adopt bylaws, issue stock, or call a meeting.

Title 13–A M.R.S.A. § 620(2) states:

Any action required or permitted under this Act to be taken at a meeting of the shareholders may be taken without a meeting, if written consents, setting forth the action so taken, are signed by the holders of all outstanding shares entitled to vote on such action and are filed with the clerk of the corporation as part of the corporate records.

The fact that the "unanimous" consent resolution of the shareholders authorizing Stephen and Ursula's termination was not signed by all of the shareholders on August 30, 1994, is not dispositive, because the shareholders ultimately ratified the action terminating Stephen and Ursula.

■ The fact that Stephen and Ursula had the right to elect three members of the board of directors is also not dispositive. The Incorporation Agreement requires a majority vote of the Board of Directors to terminate the managers of U.S.I. The Articles of Incorporation provided that there should be not

less than three nor more than seven directors and that the initial board would include six directors. The Articles, however, did not name the initial directors. The Incorporation Agreement provides that Stephen will serve as President of U.S.I. and Ursula as Vice–President and Chairman of the Board of Directors as long as they are employed as Managers. It prohibited Stephen and Ursula, however, from voting as directors on questions regarding their continued employment with U.S.I. It also gives Stephen and Ursula, as managers, the power to elect three members of the Board of Directors and Hersh and the investors the power to elect three members.

Stephen and Ursula cannot claim the benefits of the agreement the court found they themselves had breached. *See* 71 Am.Jur.2d *Specific Performance* §§ 60, 65 (1973) (party who has failed to perform her obligations pursuant to the contract cannot demand specific performance of the contract); *cf. United States v. Premier Contractors, Inc.,* 283 F.Supp. 343, 348 (D.Me.1968) (party cannot recover on her contract unless she can prove substantial performance of her own obligations pursuant to the contract or that performance was made impossible). Also, the agreement does not contain a provision that would have allowed Ursula to resign in favor of a new director of her choosing who then could have voted in favor of Stephen and Ursula retaining their employment. *See* 13–A M.R.S.A. § 706(3) (1981) (at the time of a director's tender of her resignation the board of directors or the shareholders may elect a successor). Thus, the court did not err in concluding that the action terminating Stephen and Ursula was valid in these circumstances.

### III.

Stephen and Ursula contend that Hersh, Plopper, and Fitzgerald fraudulently and negligently represented that Stephen and Ursula would own twenty-five percent of the stock in U.S.I. with the knowledge of its falsity in order to induce them to assign their rights in the properties and that they assigned their rights in justifiable reliance on those representations and the Incorporation Agreement.

■■■■■ In order to prevail on a claim of fraud a plaintiff must show that a person:

(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Fitzgerald,* 658 A.2d at 1069 (citation omitted). To prevail on a claim of negligent misrepresentation a plaintiff must show:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary losses caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating information.

*Brae Asset Fund, L.P. v. Adam,* 661 A.2d 1137, 1140 (Me.1995) (citations omitted).

■■■■ The court found that Hersh, Plopper, and Fitzgerald made no false or negligent misrepresentations to Stephen and Ursula regarding Stephen and Ursula's ownership of stock in U.S.I. It found that their testimony was credible and that Stephen's testimony was not. The court relied on the testimony it found credible and the language of the contract that Stephen and Ursula would earn their stock interest at the rate of five percent a year, conditioned on their continued employment. Accordingly, there is competent evidence in the record to support the court's determination that Stephen and Ursula failed to establish by a preponderance of the evidence the elements of fraud and negligent misrepresentation.

### IV.

The court awarded costs to U.S.I. in the amount of $15,574.96, pursuant to 14 M.R.S.A. §§ 1501–1502–D (1980 & Supp.

1995) and the Incorporation Agreement.[4] Included in the total amount of allowable costs were the fees of U.S.I.'s accounting expert in the amount of $13,247.50. The court found that the fees were also recoverable by U.S.I. as damages. Stephen and Ursula contend that the amount of costs awarded to U.S.I. were excessive because they exceeded an amount properly allocable to his trial attendance.

■■■ Pursuant to 14 M.R.S.A. § 1502–C (Supp.1995) and 16 M.R.S.A. § 251 (Supp. 1995), a court may include as costs expert witness fees and expenses incurred by the expert's attendance at trial.[5] In U.S.I.'s bill of costs it stated that the total amount of its expert fees and expenses was $13,247.50 and that only $2,534.64 of that amount represented his fees and expenses associated with trial attendance. The court's award of the total amount of the expert fees as costs was therefore error. The fees, however, are recoverable as damages for Stephen and Ursula's breach of contract. The overriding purpose of an award of compensatory damages for a breach of contract is to place the nonbreaching party in as good a position as she would have been in had there been no breach. *Williams v. Ubaldo*, 670 A.2d 913, 917 (Me. 1996) (citations omitted). As the court properly noted the costs incurred by U.S.I. in hiring its expert were directly attributable to Stephen and Ursula's breach of contract. If Stephen and Ursula had not breached the contract there would have been no need for U.S.I. to hire him to reconstruct the financial records of U.S.I. that were compromised by Stephen and Ursula's actions.

The entry is:

Judgment modified in accordance with the opinion herein to increase the amount of damages by $10,712.86 and to reduce the amount of costs by this same amount. As so modified, affirmed.

All concurring.

---

**4.** Section 10 of the Incorporation Agreement provides in relevant part: "In the event of breach hereof, the party found to be in default shall be obligated to pay the court costs and attorney's fees of the non-breaching party."

**5.** Title 14 M.R.S.A. § 1502–C(1) (Supp.1995) states that: "the court may include as costs ... [e]xpert witness fees and expenses, as allowed by Title 16, section 251...." Title 16 M.R.S.A. § 251 (Supp.1995) states in relevant part that: "[t]he court in its discretion may allow at the trial of any cause, civil or criminal, in ... the Superior Court ... a reasonable sum for each day's attendance of any expert witness or witnesses at the trial, in taxing the costs of the prevailing party...."