**Byron A. CROWE, Plaintiff,**

v.

**J.P. BOLDUC, Defendant.**

**No. CIV. 01–260–P–H.**

United States District Court, D. Maine.

June 4, 2002.

**234**

John M.R. Paterson, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for Plaintiff.

Michael Joseph Gartland, Regan M. Hornney, Marcus, Clegg & Mistretta, P.A., Portland, ME, for Defendant.

## ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, Chief Judge.

The United States Magistrate Judge filed with the court on May 6, 2002, with copies to counsel, his Recommended Decision on Defendant's Motion for Summary Judgment. The defendant filed an objection to the Recommended Decision on May 14, 2002. I have reviewed and considered the Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determine that no further proceeding is necessary.

It is therefore ORDERED that the Recommended Decision of the Magistrate Judge is hereby ADOPTED. The defendant's motion for summary judgment is GRANTED as to Count II and is otherwise DENIED.

By agreement of the parties, a correction is made to the Recommended Decision on page 4, first paragraph, lines 8–9. The sentence should read: "Counsel for the plaintiff contends that he orally informed counsel for the defendant of the existence of the action sometime before this letter was sent."

So ORDERED.

## RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, J.P. Bolduc, moves for summary judgment on both counts of the complaint in this action which he removed

to this court from the Maine Superior Court (Knox County). I recommend that the court grant the motion in part and deny it in part.[1]

## I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. . . . By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party. . . .'" *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548); Fed. R.Civ.P. 56(e). "This is especially true in respect to claims or issues on which the nonmovant bears the burden of proof."

*International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir.1996) (citations omitted).

## II. Factual Background

The parties' statements of material facts, submitted pursuant to this court's Local Rule 56, include the following undisputed material facts.

The plaintiff was the president and sole shareholder of Andrew Crowe & Sons, Inc., doing business as Crowe Rope Company ("Crowe Rope"). Defendant's Statement of Material Facts as to Which There is No Genuine Issue of Material Fact to be Tried ("Defendant's SMF") (Docket No. 7) ¶ 3; Plaintiff's Response to Defendant's Statement of Material Facts, etc. ("Plaintiff's Responsive SMF") ¶ 3. The plaintiff owned the stock of Portco, Inc. and Floatation Products, Inc. *Id.* ¶ 5. As of early December 1995 Crowe Rope, either directly or as the guarantor of the debts of Portco, Inc. and Floatation Products, Inc., owed Fleet National Bank of Massachusetts the sum of $8,692,388.26. *Id.* ¶ 6. In order to secure the debt, the bank was granted mortgages on and security interests in all of the assets of Crowe Rope. *Id.* In December 1995 the defendant, through an entity known as JPB Maine Holdings, LLC ("Holdings"), purchased the debt from the bank and acquired the mortgages and security interests. *Id.* ¶ 9.

In order to pay the debt owed or guaranteed to Holdings by Crowe Rope, Crowe Rope, the plaintiff and the plaintiff's wife entered into several agreements with the defendant in December 1995. *Id.* ¶ 11. These agreements are the following: (i) a letter agreement dated December 8, 1995 executed between and among the Crowes

---

1. The plaintiff "concedes that Count II of the Complaint is barred." Plaintiff's Response to Defendant's Motion for Summary Judgment, etc. ("Plaintiff's Opposition") (Docket No. 12) at 15. I agree, and recommend that the court grant the motion as to Count II.

and the defendant (the "Letter Agreement")[2]; (ii) an agreement dated December 8, 1995 executed between and among the Crowes and the defendant (the "Agreement"); and (iii) a guaranty dated December 15, 1995 executed by the defendant and Crowe Rope Industries LLC (the "Guaranty") (together, the "Operative Agreements"). *Id.* ¶ 12. In the Agreement, the defendant and a corporation to be formed by him agree to (i) pay the Crowes the sum of $40,000 annually in quarterly installments for so long as either of them is living and (ii) pay to the plaintiff the sum of $60,000 in twelve equal monthly installments for consulting services and for the plaintiff's agreement not to compete with the new corporation for a period of five years. *Id.* ¶¶ 19–20. The plaintiff testified at his deposition that the defendant had paid the $60,000 and had lived up to his obligation to pay the $40,000 annuity. *Id.* ¶ 21. As a result of the transaction, Crowe Rope became an insolvent shell company with no assets, owing substantial debt to trade creditors. Plaintiff's Additional Statement of Material Facts Pursuant to Local Rule 56(C) ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF) ¶ 2; Defendant's Response to Plaintiff's Additional Statement of Material Facts, etc. ("Defendant's Responsive SMF") (Docket No. 16) ¶ 2. The transaction made no provision for the payment of any trade creditors of Crowe Rope. *Id.* ¶ 4.

On May 6, 1998 Achille Bayart & Cie filed a complaint in this court against the Crowes, initiating an action by which it sought to collect an alleged debt of $132,827 owed to it by Crowe Rope. Defendant's SMF ¶¶ 25, 27; Plaintiff's Responsive SMF ¶¶ 25, 27. Achille Bayart sought to avoid the $40,000 annuity as a fraudulent transfer. *Id.* ¶ 27. The plaintiff first

became aware of the commencement of this action in late May or early June 1998. *Id.* ¶ 28. By letter dated October 28, 1998 counsel for the plaintiff first informed counsel for the defendant in writing of the Achille Bayart action. *Id.* ¶ 31. This letter also purported to tender the defense of the action to the defendant. *Id.* Counsel for the plaintiff contends that he orally informed counsel for the plaintiff of the existence of the action sometime before this letter was sent. Plaintiff's Responsive SMF ¶ 31 & Deposition of Robert J. Keach, Esq., Exhibit 3 thereto, at 18–20. The defendant refused to accept the tender of the defense. Defendant's SMF ¶ 34; Plaintiff's Responsive SMF ¶ 34.

After the plaintiff in the Achille Bayart action had presented its case to a jury, this court granted the Crowes' motion for judgment as a matter of law. *Id.* ¶ 35. The judgment was affirmed by the First Circuit Court of Appeals after Achille Bayart took an appeal. *Id.* ¶ 36. The Crowes never disgorged the $60,000 fee nor the $40,000 annuity to Achille Bayart. *Id.* ¶ 37. Counsel for the plaintiff kept counsel for the defendant fully and continually informed of the status and progress of the Achille Bayart lawsuit. Plaintiff's SMF ¶ 7; Defendant's Responsive SMF ¶ 7. At no time between the filing of the Achille Bayart lawsuit and the trial in January 2000 did counsel for the defendant protest or criticize or make any suggestions to counsel for the plaintiff about the handling of or the defense strategy in that action. *Id.* ¶ 9.

The plaintiff in this action seeks damages in the amount of $91,477.26 on account of the legal fees and costs he incurred in defending the Achille Bayart

---

**2.** The parties have stipulated that the reference to an agreement "dated December 7, 1995" in the first sentence of the Letter Agreement should be a reference to an agreement dated December 8, 1995. *Id.* ¶ 14.

action. Defendant's SMF ¶ 52; Plaintiff's Responsive SMF ¶ 52.

### III. Discussion

The defendant relies on the following language in the Operative Agreements to support his contention that he is entitled to summary judgment on the plaintiff's claim that he breached that contract:

> Reference is made to that certain Agreement dated December [8], 1995, between the undersigned [J.P. Bolduc] and Byron A. Crowe and Ruth Crowe, and in particular to the provisions therein which require Newco to pay and J.P. Bolduc to guaranty the Crowes the sum of $60,000 as a fee for consulting and agreeing not to compete and the further sum of $40,000 per year, during the lifetimes of Byron A. Crowe and Ruth Crowe, in payment for the transfer of certain real estate owned by Crowe.

> \*    \*    \*    \*    \*    \*

> In the event that any claim is made against the Crowes or either one of them, by [Andrew C. Crowe & Sons, Inc. ("the Company")], a trustee for the Company, or a receiver for the Company, or any other fiduciary appointed by or for the Company, or by a creditor of the Company or any fiduciary appointed by or for any such creditor or creditors, respecting such payments to be made to the Crowes, or if such payments are otherwise enjoined, trusteed, attached or delayed for any reason whatsoever by any such person, the Crowes shall immediately notify Bolduc, in writing, of any such claim, and shall tender the entire defense of any such claim to Bolduc, who thereupon shall be entitled to defend such claim, to compromise it or settle it, in his sole judgment, as he may deem appropriate, and at his sole cost and expense, but without affecting Bolduc's obligation hereunder.... In all respects, the Crowes shall fully cooperate in the defense and settlement of any such claim, provided that all cost and expense thereof is paid or provided for by Bolduc.

Letter Agreement, Exh. 6 to Defendant's SMF, at 1–2.

> 6. *Defense.* The parties acknowledge the possibility that creditors of Crowe Rope may commence litigation including involuntary bankruptcy proceedings against Crowe Rope or [Byron A. and Ruth] Crowe. Crowe agrees to cooperate with Bolduc in connection with the defense of such actions as and to the extent requested by Bolduc, provided Bolduc makes satisfactory provision for all costs including legal fees incurred by Crowe in connection with such proceedings. Bolduc agrees that absent such direction and funding, Crowe shall not be required to defend any pending or future civil actions, administrative proceedings or future bankruptcy proceedings, it being the intention of Crowe to cease all involvements with the affairs of Crowe Rope. Bolduc acknowledges that there are several creditor lawsuits now pending against Crowe Rope and agrees that Crowe shall have no obligation to defend the same.

Agreement, Exh. 7 to Defendant's SMF, ¶ 6 at 4.

The defendant contends that the language of the letter agreement, which "entitles" him to defend the Achille Bayart claim against the plaintiff, does not require him to defend it and that he is therefore entitled to summary judgment on the plaintiff's claim for costs and fees incurred in defense of that claim. Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 6) at 12–15. The plaintiff responds that the language at issue in fact requires the defendant to defend, compromise or settle the claim and does not allow him to reject a tender of defense. Plaintiff's Opposition at 4–7.

■ Under Maine law, which applies to the Agreement by its terms, Agreement ¶ 7 at 5, "[t]he interpretation of an unambiguous written contract is a question of law for the Court; the interpretation of ambiguous language is a question for the factfinder." *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983). "The issue of whether contract language is ambiguous is a question of law for the Court." *Id.* "Contract language is ambiguous when it is reasonably susceptible of different interpretations." *Guilford Transp. Indus. v. PUC*, 746 A.2d 910, 914 (Me.2000) (citation omitted). A contract should be construed viewing it as a whole. An interpretation that would render any particular provision meaningless should be avoided. *McCarthy v. U.S.I. Corp.*, 678 A.2d 48,52 (Me.1996) (citations omitted).

■■ I can only conclude that the contract language at issue is reasonably susceptible of the differing interpretations that the parties place on it. The language could mean that Bolduc is entitled to accept the tendered defense but not required to do so, or it could mean that Bolduc must defend, compromise or settle the claim once the defense is tendered. The former interpretation is supported by the requirement set forth in the Letter Agreement that Bolduc provide the Crowes with substitute payments if a court orders either of them to turn over any portion of the $60,000 fee or the $40,000 annuity. Letter Agreement at 1. The latter interpretation is supported by the statement in the Agreement that it is the intention of Crowe "to cease all involvement with the affairs of Crowe Rope." Agreement ¶ 6 at 5. The plaintiff does not seek summary judgment on Count I of his claim, and in any event the evidence offered by the plaintiff concerning the intention of the parties with respect to the quoted language of the Letter Agreement and the Agreement at the time they were executed is not sufficient to allow the court to determine that a reasonable factfinder could only conclude that the plaintiff's view of that intention is the correct view. Accordingly, Count I must proceed to trial.

The defendant states repeatedly that the plaintiff's written notice to him of the Achille Bayart action was untimely but does not argue that this excused his performance under the Operative Agreements. Defendant's SMF ¶¶ 29, 31, 33, 34; Motion at 16; Defendant's Reply Memorandum to Plaintiff's Response to Defendant's Motion for Summary Judgment, etc. (Docket No. 15) at 4. If the defendant intended to make such an argument, it is so undeveloped in his submissions to the court that it will not be considered in connection with this motion.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED** as to Count II and otherwise **DENIED**.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de*

*novo review by the district court and to appeal the district court's order.*