ENTERED AUG 2 8 2014

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-12-41

TEH -CUM-06-02-14

JAMES C. EBBERT, Court-appointed )
Receiver for Associated Grocers of Maine, )
Inc., )

                Plaintiff )

v. )

BUDDIES GROCERIES, INC., GEORGE )
RANCOURT, and STEPHEN PHAIR, )

             Defendants )

ORDER ON DEFENDANTS' MOTION TO
DECLARE THE RIGHTS OF THE
PARTIES

This matter is before the court on the motion of Defendants Buddies Groceries, Inc. (Buddies Groceries), George Rancourt, and Stephen Phair for a declaration of the rights and responsibilities of the parties in connection with a loan transaction in November 2008 involving Defendants and Associated Grocers of Maine, Inc. (AGME), and a subsequent settlement agreement in May 2013. Plaintiff James C. Ebbert, the court-appointed Receiver for AGME (Receiver)[1] disagrees with Defendants' position regarding those rights and responsibilities.

Although several documents were part of the loan transaction, the following are at the heart of Defendants' motion:

1.     A Promissory Note arising out of the loan transaction between Defendants and AGME occurring on November 18, 2008 (Defs' Exh. 2);

2.     A Settlement Agreement and Mutual Releases dated May 6, 2013, and amended May 22, 2013, between Receiver, the Bank of Maine and some members of AGME (settlement agreement) (Defs' Exh. 9); and

---

[1] Ebbert was appointed receiver of AGME by consent, *see Savings Bank of Me. v. Assoc. Grocers of Me.,*

3. A Joinder to Settlement Agreement, dated May 22, 2013, pursuant to which Buddies Groceries, as a member of AGME, agreed to join and be bound by the terms of the settlement agreement (joinder agreement) (Defs' Exh. 10).

In a Scheduling Order in this case dated November 22, 2013, the Court (Nivison, J.) authorized the filing of a motion by Defendants requesting "a declaration of the parties' rights and obligations under certain documents" related to the loan transaction and settlement agreement.[2] Pursuant to that authorization, Defendants' motion addresses the following issues:

1) Does the Promissory Note in the loan transaction constitute a loan to and the corporate debt of Buddies Groceries, or a loan to and the personal debt of Rancourt and Phair?

2) Does the settlement agreement, as amended, together with the joinder agreement, constitute a release by Receiver of any further obligation by Defendants, individually and collectively, to pay the Promissory Note?

3) If the answer to Question 2 is no, has the Note been satisfied by Receiver's alleged retention of collateral, identified as Buddies Groceries membership interest in and its capital account with AGME, that was pledged to secure the Note?

Defendants argue that the Promissory Note is the obligation of Buddies Groceries, not Rancourt and Phair; that the mutual release in the settlement and joinder agreements includes the Note; and that, even if the Note was not included in the settlement agreement, any obligation of Defendants under the Note has been satisfied by the Receiver's retention of collateral used to secure the loan. Based on these arguments, Defendants maintain that they are not indebted to AGME and are not required to make any further payments to Receiver.

Receiver asserts that the Promissory Note is in fact the personal obligation of Rancourt and Phair; that neither Rancourt nor Phair is a party to the settlement and joinder agreements and, therefore, the mutual release in the settlement agreement only benefits Buddies Groceries and does not encompass the Note obligation; that the settlement and joinder agreements address

---

[2] The Scheduling Order also authorized the Bank of Maine, in its discretion, to file an opposition and surreply in support of its opposition to the motion.

2

only amounts due from Buddies Groceries on the accounts receivable it owes to AGME; and that the "collateral" in question was used to satisfy AGME's obligations to the Bank of Maine ("BOM") and is not available to offset the Note obligation.

FACTUAL BACKGROUND

The following facts are not disputed. AGME distributed and delivered grocery-related products to independent retailers throughout northern New England. AGME would enter into membership agreements with these retailers, who would then become customers of AGME. Those agreements and AGME's by-laws required that, as a precondition to purchasing grocery products, each member had to acquire one share of Class A Voting Common Stock in AGME and two shares of Class B Preferred Stock.[3] See Defs.' Exh. 9 at 3–4. The member had to pay for the Class A stock upon execution of the membership agreement. *Id.* The Class B stock was purchased by way of a minimum 1% surcharge assessed on product sales to the member. *Id.* The member also agreed that initial surcharge payments would be used to establish a capital account until the book balance of the capital account totaled a "Factor" amount established by AGME. *Id.* In addition, the member also had the option of making additional surcharge payments to the capital account to establish an excess capital amount in addition to the Factor. *Id.* Finally, in the event that a member ceased to be eligible for membership in AGME, it was "entitled to be paid the book balance of its Factor." *Id.*

Buddies Groceries was and is a Maine corporation. Phair is its President and Rancourt its Treasurer. Together, they are also the sole shareholders of Buddies Groceries.

In 1995, Buddies Groceries and AGME entered into a membership agreement. AGME supplied grocery products to Buddies Groceries on account and billed Buddies Groceries for

---

[3] This business relationship is also discussed in the summary judgment Decision and Order, dated February 15, 2013, in the related matter of *Ebbert v. P&L Country Market, Inc.*, BCD-CV-11-35 (Bus. & Consumer Ct., Feb., 15, 2013) (Nivison, J.).

3

them. As required by the agreement and AGME's by-laws, Buddies Groceries purchased one share of Class A Voting Common Stock in AGME and two shares of Class B Preferred Stock; paid a minimum 1% invoice surcharge to fund its capital account; and made additional payments to establish excess capital in its capital account.

Also, as was required of all AGME members by the membership agreement and bi-laws, Buddies Groceries "agreed that the book balance of its capital account was subject to any subordination agreements that AGME might have with its lending institutions." *Id.* at 4 "In September 2005, AGME established a $6,500,000 line of credit with [BOM and] granted the Bank a security interest in AGME's accounts receivable." Order on Motion for Summary Judgment, *Ebbert v. P&L Country Market, Inc.*, BCD-CV-11-35 (Bus. & Consumer Ct., Feb. 15, 2013) (Nivison, J.) at 3.

On November 18, 2008, Defendants entered into a $40,000 loan transaction with AGME. As part of the loan transaction, Phair and Rancourt executed several documents:

1. A Loan Agreement signed by Phair and Rancourt in three designated capacities: (a) "doing business as Buddies Groceries, Inc.", (b) as officers of Buddies Groceries and (c) as Guarantors;

2. A Promissory Note in the principal sum of $40,000 signed by Phair and Rancourt without designation;

3. A Borrower Security Agreement signed by Phair and Rancourt in two designated capacities: (a) "doing business as Buddies Groceries, Inc.", and (b) as officers of Buddies Groceries;

4. A Pledge and Security Agreement signed by Phair and Rancourt in two designated capacities: (a) "doing business as Buddies Groceries, Inc.", and (b) as officers of Buddies Groceries;

5. An Inventory Purchase Agreement signed by Phair and Rancourt as officers of Buddies Groceries; and

4

6. Phair and Rancourt each individually executed and gave personal Unlimited Guaranties to AGME with respect to various obligations that included the Promissory Note.

(*See* Defs.' Exhs. 1-7.)

On December 28, 2010, pursuant to a letter agreement with BOM, AGME agreed that all capital accounts "shall at all times be subordinate to the payment of" a revolving credit line to BOM. (Defs'. Exh 9 at 4) On April 27, 2011, BOM sued AGME for breach of contract and unjust enrichment. *Id.* at 2. On that same date, the court appointed Receiver to take custody and control of AGME's assets, including those that constituted BOM's collateral, and to wind up the business of AGME. Id. at 2; *see also* note 1. The receivership Order was amended on June 15, 2011. *Id.* At the commencement of the receivership, all of the AGME capital accounts, including that of Buddies Groceries, were unfunded. *Cf.* Order on Motion to Intervene, *Savings Bank of Me. v. Assoc. Grocers of Me., Inc.*, BCD-CV-11-36 (Bus. & Consumer Ct., Dec. 20, 2011).

On June 13, 2011, Receiver sent Defendants a notice of default on the loan.

In April 2012, Receiver initiated this lawsuit against Rancourt and Phair to collect sums allegedly owed by them to AGME under the Promissory Note, and separately against Buddies Groceries to collect on accounts receivable allegedly owed by Buddies Groceries to AGME.[4] This is one of several actions brought by Receiver against former AGME members.[5]

---

[4] Receiver's complaint asserts four causes of action against Buddies Groceries based on the outstanding accounts receivable obligation: breach of contract (Count I); action on account annexed (Count II); unjust enrichment (Count III); and quantum meruit (Count IV); and asserts three claims against Rancourt and Phair, individually, based on the Promissory Note: breach of contract (Count V); unjust enrichment (Count VI); and breach of guaranty (Count VII).

[5] On August 10, 2012, the court consolidated 30 of those cases, including this one, for the determination of a motion and cross-motion for summary judgment having an issue central to all of them, to wit: whether Defendants in each of the consolidated cases is entitled to a setoff in the amount of each Defendants' capital account book balance against the amount claimed by Receiver to be owed on account

5

In 2013, many former members of AGME who were being sued by Receiver participated in a judicially assisted settlement conference in an attempt to resolve their disputes. Neither Phair nor Rancourt personally participated in the settlement process, but Defendants were represented at the conference by Attorney Joseph Goodman.[6] As a result, on May 6, 2013, Receiver, BOM and three former members of AGME entered into a Settlement Agreement and Mutual Releases ("settlement agreement"); however, Buddies Groceries was not among them. Nevertheless, the settlement agreement allowed other former members of AGME to participate in the settlement by executing a separate Joinder To Settlement Agreement ("joinder agreement").

Buddies Groceries executed the joinder agreement on May 22, 2013, and paid the settlement payment required of it under the settlement agreement: $13,686. The settlement payment was a discounted amount that fully resolved Buddies Groceries' accounts receivable obligation. (Defs' Exh. 9 at Exh. A). This payment was calculated as of the date of the settlement agreement by taking the gross amount of Buddies Groceries' accounts receivable obligation ($19,304) and subtracting 29.1% of the lesser of that accounts receivable figure or the balance in Buddies Groceries' capital account, including its excess capital amount, ($39,605) (*Id.* at 9 at 6; see also *Id.* at Exh. A). This provision for calculating the settlement payment did not mean that Buddies Groceries actually had money in its capital account to apply to the payment; as noted earlier, the capital account was unfunded when the receivership began.

for unpaid product purchases. *See Ebbert v. Joseph Sleeper & Sons, Inc.*, BCD-CV-12-28 (Bus. & Consumer Ct., Aug. 12, 2012) (Nivison, J.) ("Through the motion, Plaintiff is deemed to have generated the issue in all of the consolidated cases.") The court determined that unresolved factual issues precluded summary judgment.

[6] Buddies Groceries has since retained Attorney Robert Sandy as counsel; Attorney Sandy did not participate in the settlement conference.

6

Rather, it was simply a formula for determining a compromised payment to be made by Buddies Groceries in full satisfaction of the Receiver's claim for the outstanding accounts receivable. Pursuant to the settlement agreement, Buddies Groceries paid the settlement amount in four equal monthly payments. *Id.*

Thereafter, a dispute arose as to whether the compromised resolution under the settlement and joinder agreements applied only to the accounts receivable amount owed by Buddies Groceries to AGME[7] or whether the agreements also applied to amounts owed under the Promissory Note. This particular dispute is at the heart of Defendants' motion to declare the rights of the parties and centers around interpretations of the Promissory Note and the settlement and joinder agreements.

## PROCEDURAL BACKGROUND

As styled, Defendant's motion appears to be an anomaly. There is no request for a declaratory judgment in this case and Maine's Rules of Civil Procedure do not expressly provide for a motion to declare the rights of parties in contract litigation. However, at oral argument counsel offered that the motion may be likened to one for summary judgment and the parties stipulated that the court could decide the motion on the court record, which includes the operative loan documents reflecting the contractual relationships between AGME, Buddies Groceries, Rancourt and Phair.[8] *See Sears, Roebuck & Co. v. State Tax Assessor*, 2012 ME 110, ¶ 4, 52 A.3d 941 (outlining a similar process where the court determined a legal issue based upon stipulated facts). While this process is somewhat analogous to summary judgment practice, there

---

[7] At the time this litigation was commenced in April 2012, the balance on Buddies Groceries' accounts receivable owed to AGME was $19,303.66.

[8] The parties also agreed that if the Court determined that more information, testimony, or documentation was needed for a full declaration of the rights of the parties, the Court should deny the motion.

7

is a difference. Because the motion is submitted for a decision on a stipulated record, the court is entitled to determine any factual issues from the stipulated record and draw any necessary inferences if it can. *See Boston Five Cents Savings Bank v. Secretary of HUD*, 768 F.2d 5, 11–12 (1st Cir.1985). Whereas, on a motion for summary judgment the court is not allowed to decide any factual issues for which the facts are in dispute. *Id.*

With this procedural backdrop in mind, the court now considers what is basically a contract dispute. The interpretation of a contract and the interpretation of a settlement agreement involve the same principles. *See Flaherty v. Muther*, 2013 ME 39, ¶ 17, 65 A.3d 1209. The interpretation of each and the question of "whether or not its terms are ambiguous are questions of law." *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 26, 989 A.2d 733. "Contract language is only ambiguous if it is reasonably susceptible [to] different interpretations." *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 9, 983 A.2d 400 (quotation marks omitted). If a contract is unambiguous, it is interpreted "according to the plain meaning of the language used," *Camden Nat'l Bank v. S.S. Navigation Co.*, 2010 ME 29, ¶ 16, 991 A.2d 800, "without resort to extrinsic evidence," *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989.

In like manner, "[a] contract should be construed viewing it as a whole. An interpretation that would render any particular provision in the contract meaningless should be avoided." *McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 52 (Me. 1996) (citation omitted). Further, "[i]t is a well established principle that a contract is to be interpreted to give effect to the intention of the parties as reflected in the written instrument, construed in respect to the subject matter, motive and purpose of making the agreement, and the object to be accomplished." *Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 26, 1 A.3d 416 (quotation marks omitted).

8

DISCUSSION

At the outset of this Order, the court articulated the issues raised by Defendants' motion. As to the first issue, the court is asked to interpret the Promissory Note to determine whether it is the corporate obligation of Buddies Groceries, or the personal obligation of Rancourt and Phair. As to the second, the court is asked to determine whether, in addition to releasing AGME's accounts receivable claim against Buddies Groceries, the settlement and joinder agreements also released AGME's claims under the Promissory Note. If the court concludes that the Note obligation is not released under the settlement and joinder agreements, then a third issue may be generated as to whether Receiver has retained collateral that was pledged to secure the Promissory Note and, if so, whether the retention of that collateral has satisfied any remaining obligations of Defendants under the Note.

A.    The 2008 Promissory Note and Loan Transaction

Defendants argue that the Promissory Note unambiguously provides that it is solely the corporate obligation of Buddies Groceries. In support, Defendants point to paragraphs in the Note which refer to the obligations of the Note's "Borrower" in other loan documents:

Inventory Purchase Agreement.

> Paragraph 4 (PREPAYMENT) of the Note provides that the prepayment of the Note does not change "Borrower's obligations or performance defined in the Inventory Agreement." (Defs.' Exh. 2 at 1.); and
>
> Paragraph 11 (SUPPLY PURCHASE RELATIONSHIP) of the Note provides that the loan is made "in express reliance on maintenance by the Borrower of a supply purchase relationship with Lender as more full (sic) set forth in the Inventory Agreement … and the full and faithful performance by Borrower of all obligations under the Inventory Agreement." (*Id.* at 5.)
>
> The Inventory Agreement, actually called the Inventory Purchase Agreement, does not use the term Borrower. The only parties to the Inventory Agreement are AGME and Buddies Groceries, referred to as the "Customer", and the agreement is signed by Phair and Rancourt as officers of Buddies Groceries. (Defs.' Exh. 5)

9

<u>Borrower Security Agreement and Pledge and Security Agreement.</u>

Paragraph 5 (SECURITY) of the Note provides that the "Note is also secured pursuant to the terms and conditions of (a) a Security Agreement ... between the Borrower and Lender ..., and (b) a Pledge and Security Agreement ... between Borrower and Lender pledging Borrower's membership in" AGME. (Defs.' Exh. 2 at 1–2.)

There is no Security Agreement in the loan transaction documents; however, there is a Borrower Security Agreement. (Defs.' Exh. 3) That agreement does not use the term Borrower; however, the only parties are AGME, as the Secured Party, and Buddies Groceries, as the Debtor. It is signed by Phair and Rancourt in two designated capacities: (a) "doing business as Buddies Groceries, Inc.", and (b) as officers of Buddies Groceries;

The Pledge and Security Agreement also does not use the term Borrower; however, the only parties are AGME, as the Secured Party, and Buddies Groceries, as the Pledgor. (Defs.' Exh. 4) It is also signed by Phair and Rancourt in the identical capacities designated in the Borrower's Security Agreement.

Further, paragraph 6 (DEFAULT) of the Note provides that "the failure of the Borrower to timely pay accounts receivable from Borrower to Lender" constitutes an event of default. (Defs.' Exh. 2 at 2.) The only Defendant obligated to pay accounts receivable to the Lender AGME is Buddies Groceries. In addition, the Loan Agreement identifies the "Borrower" as Phair and Rancourt "doing business as Buddies Groceries", and is signed by them as "doing business as Buddies Groceries, Inc.", and as officers of Buddies Groceries. (Defs.' Exh. 1)

In the alternative, Defendants argue that, based upon the foregoing, the designation of the "Borrower" in the Note is ambiguous.

The court has reviewed all of these documents and agrees with Receiver that the key document in this particular analysis is the Promissory Note itself. In the opening paragraph, the Note identifies the "Borrower" as "the undersigned". (Defs. Exh. 2 at 1.) Phair and Rancourt signed the Note below the "Borrower" signature line, without any designation, qualification or limitation. (*Id.* at 6.) The Note does not expressly name Buddies Groceries at all, and does not expressly refer to Phair and Rancourt as acting in any capacity for or on behalf of Buddies

10

Groceries. Although paragraph 12 of the Note does provide that "[i]f Borrower is an individual, Borrower represents that it is voluntarily acting as a sole proprietorship and is not acting in an individual capacity in connection with this loan", that same paragraph later provides that "Borrower shall mean each undersigned party" (*Id.* at 5–6.) *See Bank of America, N.A. v. Barr*, 2010 ME 124, ¶ 26, 9 A.3d 816 (citing *See Ladd v. Scudder Kemper Invs., Inc.*, 433 Mass. 240, 741 N.E.2d 47, 49–50 (2001) (stating that a sole proprietorship is a business form in which an individual owns the business and a sole proprietor "refers to a single individual who owns a business"); *Recalde v. ITT Hartford*, 254 Va. 501, 492 S.E.2d 435, 437 (1997) (stating that a sole proprietorship is a "form of business in which one person owns all the assets of the business in contrast to a partnership, trust or corporation").

Defendants acknowledge, as they must, that the Promissory Note is signed by Phair and Rancourt without qualification. However, they assert that, on its face, the Note is nonetheless a corporate obligation because it also refers to Phair and Rancourt as "Guarantors" and expressly states that it is secured by the personal Unlimited Guarantees of Phair and Rancourt. (Defs.' Exh. 2 at 1.) According to Defendants, there would be no purpose served by the Unlimited Guaranties if the Note was already the personal obligation of Phair and Rancourt.

The Court is not persuaded by this argument because the guaranties signed by Rancourt and Phair encompass more than the Note; they include all claims of AGME against Rancourt, Phair, and Buddies Groceries "now existing or hereafter arising." (Defs.' Exh. 6 §1.2; Defs.' Exh. 7 § 1.2.) The guaranties serve a purpose other than merely securing the note. Second, the reference to Guarantors in the Note is under the heading of "Security," which lists all the security for the Note, including other documents that are part of the loan transaction. The fact that Phair and Rancourt signed the Note in their individual capacities and also signed separate personal

11

guaranties, which encompasses more obligations than the Note, does not render the Note ambiguous as to the identity of the debtor–Borrower.

The court understands that the Note is one document in a series of agreements memorializing the loan transaction, and that those other agreements most often refer to the capacity in which Phair and Rancourt are acting as "doing business as Buddies Groceries". Defendants interpret this language as clearly establishing a corporate obligation. The court, however, views this designation not as one creating a corporate obligation, but as one identifying the nature of the loan transaction. Read together, the documents encompassing the loan transaction comprise a *business* loan from AGME to Phair and Rancourt, to be used for business purposes, i.e. Buddies Groceries. In context, Phair and Rancourt unambiguously, and personally, incurred a debt to AGME for the benefit of Buddies Groceries. Again, at the heart of it, Buddies Groceries did not sign the Note. Phair and Rancourt did and their promise to pay according to the terms of the Note is controlling.

## B.    The Settlement Agreement

The second issue relates to the scope of the settlement agreement and its mutual releases between the AGME Members, Receiver and Bank of Maine ("BOM"). The driving question is whether AGME's claims under the Promissory Note are included in and extinguished by the Receiver's release in the settlement agreement. In full, that release is as follows:

8.    The Receiver Release. In consideration for (a) the Settlement Payment, (b) the Member Release, and (c) other good and valuable consideration, the receipt, adequacy, and sufficiency of which the Receiver hereby acknowledges, and except for the obligations of each Member and BOM set forth in the Agreement, the Receiver, on behalf of himself and his principals, agents, attorneys, representatives, successors, predecessors, assigns, heirs, probate estate, and any other person acting on his behalf, hereby forever releases, disclaims, and discharges each Member and its principals, agents, attorneys, representatives, successors, predecessors, assigns, heirs, probate estate, and any other person acting on its behalf, from any and all debts, liabilities, obligations, claims,

demands, agreements, promises, representations, warranties, complaints, suits, rights or causes of action, damages, attorneys' fees, penalties, interest, costs, injunctive relief, and/or any other relief available in law or equity that the Receiver has asserted, or presently could assert, whether known or unknown, knowable or unknowable, asserted or unasserted, against such Member, including, but not limited to, claims related in any manner to or arising out of the Member's AR or AGME (the "Receiver Release").

Defs.' Exh. 9 §8.

Addressing this issue, the Court construes the settlement agreement as a whole, *see McCarthy*, 678 A.2d at 52, in order to give effect to the parties' intent, the "motive and purpose of making the agreement, and the object to be accomplished," *Coastal Ventures*, 2010 ME 63, ¶ 26, 1 A.3d 416. *See also Hallissey v. Sch. Admin. Dist. No. 77*, 2000 ME 143, ¶ 9, 755 A.2d 1068 (explaining the purpose of the parties' settlement was to clarify their rights on a particular dispute).

Defendants maintain that the language of the Receiver's release is broad enough to release Phair and Rancourt, individually, from Receiver's claim for amounts owed on the Promissory Note. For example, the release states that Receiver "hereby forever releases, disclaims, and discharges each member and ... any other person acting on its behalf, from any and all" obligations. *Id.* Under Defendants' construction, "any other person acting on [Member's] behalf" must include Phair and Rancourt, and "any and all" obligations must include the Note.

The Court does not agree for several reasons. The Court has already concluded that Phair and Rancourt executed the Note in their individual capacities, not "on behalf of" or in any representative capacity for Buddies Groceries. The Receiver's release clearly applies only to claims and demands that the Receiver has "against such Member", meaning, Buddies Groceries. *Id.* In particular, the release is limited to claims related to accounts receivable owed by Buddies

13

Groceries to AGME and does not encompass the Note. A reading of the entire settlement document makes clear that it is directed to the parties' dispute over collection of the accounts receivable owed by members to Receiver and to settle and compromise the issue of whether each member is entitled to use the balance of its capital account as a set off against its accounts receivable obligation:

> K.    Subsequent to his appointment, the Receiver has attempted to collect the outstanding accounts receivable of AGME that are owed to AGME by certain of the AG Shareholders [(AR)] . . .

> L.    Although some of the AG Shareholders that owe AR have paid the AR either in full or at a discount agreed to by the Receiver, many of the AG Shareholders that owe AR have claimed that they are entitled to set off against the amount of the AR that they owe the book balances of their respective Capital Accounts. The Receiver and [Bank of Maine] have disputed this entitlement.

> M.    *In an effort to compromise this setoff dispute and avoid further costly litigation, the Parties have entered into the Agreement.*

(Defs.' Exh. 9 at 5 (emphasis added).)

The settlement agreement is replete with references to the members' capital accounts and the accounts receivable owed by them to AGME; however, there is no discussion of any promissory note obligations. Moreover, the provision regarding Settlement Payments also reinforces the conclusion that the settlement does not apply to the Promissory Note in this case:

> Each Member shall pay to the Receiver, in full and complete satisfaction of the Member's AR, plus any interest, costs of collection and/or attorneys' fees payable with respect to the AR ... (the "Settlement Payment")

*Id.* at 6. This language does not refer to any note obligations.

Defendants argue that the mutual releases are broadly stated insofar as they apply to "any and all" claims, "including but not limited to" the accounts receivable claims. *See Cyr v. Cyr*, 560 A.2d 1083, 1084 (Me. 1989) (discussing scope of general releases). However, the Member Release specifically states that it is given in consideration of the Receiver and Bank of Maine

14

accepting the Settlement Payment in satisfaction of each member's accounts receivable. (Defs.' Exh. 9 § 7.)

Accordingly, the Court finds that the intent of the parties in entering into the settlement and joinder agreements was to resolve only the accounts receivable claims and the setoff dispute, not the claims against Buddies Groceries regarding the Promissory Note.

The Court has already determined that the Promissory Note is the personal obligation of Rancourt and Phair, not the corporate debt of Buddies Groceries. The Court now concludes that the settlement agreement is only for the benefit of the *members* of AGME and is principally designed to resolve AGME's accounts receivable claims against them. In this case, the member joining in the settlement through the joinder agreement is Buddies Groceries; the joinder constitutes an agreement between the Receiver, the Bank of Maine, and Buddies Groceries, along with the other former members of AGME who negotiated and joined the settlement agreement. Phair and Rancourt, individually, are not parties to nor expressly mentioned in the settlement agreement. *See F.O. Bailey Co., Inc. v. Ledgewood, Inc.*, 603 A.2d 466, (Me. 1992) (explaining that before a third-party can enforce a contract, the intent to benefit that party must be clear and definite in the contract itself).

C.     The Pledged Collateral

Finally, Defendants assert that in the 2008 loan transaction they pledged the balance of Buddies Groceries' capital account with AGME as security for the Promissory Note and argue that the Note has been satisfied by Receiver's retention of that collateral. The court disagrees.

Pursuant to the Members Contract and AGME's bi-laws, Buddies Groceries agreed that its "capital deposits [were] subject to any subordination agreements [AGME] may have with any lending institutions." (Defs' Exh. 9 at 4.) The balances of all the capital accounts had been

15

pledged by AGME to BOM as part of the security for the bank's loan to AGME. Any balances that might have existed in those accounts were swept by BOM. *Cf.* Order Authorizing Receiver to Distribute Funds From Escrow Account, *Savings Bank of Me. v. Assoc. Grocers of Me., Inc.*, BCD-CV-11-36 (Bus. & Consumer Ct., Jul. 27, 2012).

All of the AGME capital accounts, including that of Buddies Groceries, were unfunded at the commencement of the receivership and remained unfunded at time of the settlement agreement. *Cf.* Order on Motion to Intervene, *Savings Bank of Me. v. Assoc. Grocers of Me., Inc.*, BCD-CV-11-36 (Bus. & Consumer Ct., Dec. 20, 2011). As a result, there can be no "retention" of the unfunded capital accounts by the Receiver.

Accordingly, because Buddies Groceries' capital account is unfunded, the court concludes that it is not available as collateral to apply to the Promissory Noted signed by Phair and Rancourt. Therefore, the Note remains unsatisfied.

## CONCLUSION

In sum, the Court concludes and declares that the rights of the parties are as follows:

1. The Promissory Note is the joint and several, personal obligation of Phair and Rancourt; it is not the corporate obligation of Buddies Groceries;

2. The settlement and joinder agreements do not include or release Receiver's claims against Phair and Rancourt with respect to their obligations under the Promissory Note; and

3. Any balance in Buddies Groceries' capital account is unfunded and, therefore, is not available as collateral to apply to the obligations of Phair and Rancourt under the Promissory Note.

Pursuant to M.R. Civ. P. 79(a), the clerk shall incorporate this Order into the docket by reference.

Dated: June 2, 2014

_____
Thomas E. Humphrey
Chief Justice, Maine Superior Court

**James C. Ebbert, Court-appointed Receiver for Associated Grocers of Maine, Inc., v. Buddies Groceries, Inc., George Rancourt, and Stephen Phair**
**BCD-CV-12-41**


**James C. Ebbert, Court-appointed Receiver for Associated Grocers of Maine, Inc.,**
   **Petitioners / Plaintiffs**

   Counsel:                       Fred W. Bopp, III, Esq.
                                  One Canal Plaza, Suite 900
                                  PO Box 426
                                  Portland, ME 04112-0426


**Buddies Groceries, Inc., George Rancourt, and Stephen Phair**
   **Respondents / Defendants**

   Counsel:                       Robert E. Sandy, Esq
                                  74 Silver Street
                                  PO Box 499
                                  Waterville, ME 04903-0499